IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROL ANN DRAKE,

       Plaintiff,

v.                                        CIV 17-1135 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand

for Rehearing with Supporting Memorandum (*Doc. 17*), filed on May 21, 2018. Pursuant

to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me

serving as the presiding judge and entering final judgment. *See Docs. 4, 7, 8.* Having

considered the record, submissions of counsel, and relevant law, the Court finds

Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

On July 29, 2013, Carol Ann Drake ("Plaintiff") filed an application for disability

insurance benefits ("DIB") under Title II of the Social Security Act, alleging disability

beginning June 15, 2013. Administrative Record[1] ("AR") at 221. Plaintiff's date last

insured was December 31, 2017. AR at 65, 116, 134. Her claim was denied both initially

---

[1] Document 12-1 contains the sealed Administrative Record. *See Doc. 12-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

(AR at 115, 130) and on reconsideration (AR at 132, 149). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her application. AR at 164-65.

ALJ Doug Gabbard II held a *de novo* hearing in August 2016, at which Plaintiff appeared and was represented by non-attorney Micki Kindley. AR at 82-114. Plaintiff testified, as did a vocational expert. *See* AR at 82-114. ALJ Gabbard issued an unfavorable decision on November 3, 2016. AR at 63-77. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 217), which the Council denied on September 27, 2017 (AR at 1). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner uses a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity ("RFC"), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

Here, at Step One of the process,[2] the ALJ found that Plaintiff had "not engaged in substantial gainful activity since June 15, 2013, the alleged onset date." AR at 65 (citing 20 C.F.R. § 404.1571). At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, asthma, epilepsy, affective disorder, and anxiety disorder. AR at 65 (citing 20 C.F.R. § 404.1520). Additionally, he determined that Plaintiff had numerous non-severe impairments, including "vision loss; vertigo; recurrent pneumonia; chronic pain; pituitary neuroma; migraines; alleged numbness of the arm, hands, feet and leg; chest pain; hyperlipidemia; high cholesterol; possible chronic Lyme disease; diverticulosis; possible irritable bowel syndrome and or

---

[2] ALJ Gabbard first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2017." AR at 65.

constipation; insomnia; cannabis use; and tobacco abuse." AR at 66. The ALJ

concluded that this second set of conditions was either "amenable to proper control by

adherence to recommended medical management and medication compliance" or that

"there [was] insufficient evidence that these conditions met the durational requirements

. . . or . . . create[d] any specific functional limitations regarding [Plaintiff's] ability to

perform work related activities." AR at 66. At Step Three, the ALJ concluded that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. AR at 66 (citing 20 C.F.R. §§ 404.1520(d)), 404.1525, 404.1526).

At Step Four, the ALJ determined that Plaintiff had the RFC to perform light work

with some non-exertional limitations, including the following:

> The claimant is . . . limited to unskilled work (work, which needs little or no
> judgment to do simple duties that can be learned on the job in a short period
> of time). Her supervision must be simple, direct, concrete and non-critical;
> interpersonal contact with supervisors and coworkers must be incidental to
> the work performed, e.g., assembly work. The claimant cannot work at fast-
> paced production line speeds. She must have normal regular work breaks
> with only occasional workplace changes and she should have only
> occasional contact with the general public.

AR at 69. Given this RFC, the ALJ found that Plaintiff could not perform her past relevant

work. AR at 75-76. Nevertheless, at Step Five, he concluded, based upon testimony of

the vocational expert, that there were jobs that existed in significant numbers in the

national economy that Plaintiff could perform, to include an Inspector/Hand Packager

(DOT #559.687-074) and a Marker (DOT #209.587-034). AR at 76-77. As such, the ALJ

ultimately determined that Plaintiff was not disabled from June 15, 2013, through the

date of his decision. AR at 77 (citing 20 C.F.R. § 404.1520(g)).

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

IV. **Discussion**

Plaintiff identifies three reasons for reversal of the ALJ's unfavorable disability determination. First, she contends that the ALJ's RFC finding is incomplete and unsupported by substantial evidence, as she suggests that the ALJ failed to properly analyze the consulting opinions. *Doc. 17* at 1. Second, she maintains that an error in formulating the RFC tainted the finding that Plaintiff could work at Step Five. *Id.* at 1. More particularly, according to Plaintiff, the ALJ's reliance on the testimony of the vocational expert was contrary to law, because the ALJ failed to ask the vocational expert to identify inconsistencies between her testimony and the information in the Dictionary of Occupational Titles ("DOT"). *Id.* Relatedly, Plaintiff contends that the ALJ failed to clarify vocational testimony that appeared inconsistent with the DOT. *Id.* Finally, Plaintiff argues that it was legal error for the Appeals Council to refuse to consider evidence dated before the ALJ decision. *Id.* at 2.

A. **Plaintiff fails to show reversible error in the ALJ's determination of her exertional limitations.**

ALJ Gabbard determined that Plaintiff was able to perform light work with certain exertional limitations.[3] In so doing, he relied upon the opinions of non-examining state agency physicians rendered in February and September 2014. *See* AR at 75. Plaintiff maintains that the ALJ's limitation to light work was in error, both because other agency

---

[3] According to 20 C.F.R. § 404.1567(b):

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

findings limited her to *sedentary* work and because treatment records suggest that she could not, in fact, perform light work. *Doc. 17* at 6-7. According to Plaintiff, this determination that she could perform light work was a critical one, because a limitation to sedentary work would have rendered her disabled as a matter of law. *Id.* at 5-6 (citing 20 C.F.R., pt. 404, subpt. P, app. 2, Table 1).

Notably, it was not the state agency physician who opined that Plaintiff could perform only sedentary work; rather, it was the *disability adjudicator* who determined, on initial review, that she was capable of only sedentary work. AR at 130-31. The state agency physician, in contrast, opined on initial review that she was capable of work commensurate with *light* exertion. AR at 124-26. And, on reconsideration, both the state agency physician and the disability adjudicator determined that she could perform *light* work. AR at 148. Plaintiff appealed the agency determination, and the ALJ considered the application *de novo.* 20 C.F.R. § 404.929. The ALJ, who was not bound by the initial disability adjudicator's determination, found that Plaintiff could perform restricted light work. AR at 68-69. It is the ALJ's decision, not the agency's initial decision, which is pertinent on appeal. In other words, the disability adjudicator's prior finding that Plaintiff could perform only sedentary work does not render erroneous the ALJ's contrary finding.

Plaintiff next submits that the ALJ's determination that she could perform light work is contrary to her treatment records. She notes, for example, that in December 2015, PA M. Gallagher-Gonzales provided her with a handicap parking placard on the basis that she was unable to walk without a cane or assistance more than 100 feet without rest and because a permanent neurological condition prevented her from

climbing more than 10 stair steps. *Doc. 17* at 6 (citing AR at 448). Additionally, she submits that other medical records throughout 2014 and 2015 suggest that her fibromyalgia symptoms, including shooting pains, numbness in her extremities, neck pain, fatigue, and gastrointestinal problems, were worsening. *Id.* (citing AR 464, 468, 470, 471, 473, 482). Moreover, she emphasizes that clinical findings showed a decreased range of motion in her lumbar and cervical spine as well as tenderness of the cervical, thoracic, and lumbar spine. *Id.* (citing AR 473, 483).

The ALJ did not neglect to address the findings of PA Gallagher-Gonzales. Instead, he expressly determined that any allegation that Plaintiff was unable to walk in December 2015 was simply inconsistent with the record. AR at 74. He accurately noted, for instance, that Manual A. Gurule, M.D., one of Plaintiff's treating physicians, reported just two months earlier that Plaintiff's neurological examination was normal, as was her gait, coordination, and motor strength, and that her extremities showed no signs of neuropathy, radiculopathy, or plexopathy. AR at 73-74. The ALJ assigned PA Gallagher-Gonzales' findings little weight, because of their inconsistency with other records, such as those from Dr. Gurule. AR at 74. Accordingly, the ALJ offered specific and legitimate reasons for rejecting PA Gallagher-Gonzales' findings. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (reasoning that when an ALJ rejects an opinion, he is required to "give specific, legitimate reasons for doing so") (internal quotes omitted).

Nor did the ALJ ignore Plaintiff's fibromyalgia symptoms. He was constrained, however, by Social Security Ruling ("SSR") 12-2p, which addresses the treatment of claimants with fibromyalgia. *See* 2012 WL 3104869 (July 25, 2012). Pursuant to SSR

12-2p, an adjudicator must consider whether "there is sufficient objective evidence to support a finding that [fibromyalgia] so limits [her] functional abilities that it precludes . . . her from performing any substantial gainful activity." *Id.* at \*2. SSR 12-2p requires an ALJ to evaluate the intensity and persistence of the claimant's fibromyalgia-related symptoms and to determine the extent to which they limit her ability to work. *Id.* at \*5. If objective medical evidence does not substantiate a claimant's statements regarding intensity, persistence, and limitations, the ALJ considers all the evidence in the record, including the claimant's daily activities, her medication or other treatment, the nature and frequency of her attempts to obtain medical treatment, and any relevant statements by others. *Id.* The Ruling emphasizes that the claimant's "longitudinal record" should be considered when possible, "because the symptoms of [fibromyalgia] can wax and wane." *Id.* at \*6.

The ALJ considered the evidence of record related to Plaintiff's fibromyalgia in reaching his decision, discussing Plaintiff's relevant treatment notes at length. He acknowledged that Plaintiff "sought and received consistent treatment since alleging disability" and that her "treatment history [was] consistent with her allegations of significant pain." AR at 70. Nevertheless, he concluded that the record lacked clinical signs or medical findings that would establish a pattern of pain so severe as to support a finding of disability. AR at 70. He emphasized that diagnostic images of Plaintiff's cervical spine, lumbar spine,[4] brain, and hip, for instance, were largely unremarkable. AR at 70. Further, he determined that the electromyography and nerve conduction

---

[4] The ALJ acknowledged that a radiograph from February 2012 showed *minimal* degenerative changes in Plaintiff's lumbar spine. AR at 71.

studies revealed no neurologic or motor dysfunction in Plaintiff's extremities, despite her complaints of numbness. AR at 70. Finally, he noted that Plaintiff's physical examinations were normal, without signs of gait disturbance, muscle weakness, or neurological deficits. AR at 70. Ultimately, considering the medical records in the light most favorable to Plaintiff, the ALJ concluded that "[t]he light exertional level postural limitations were consistent with the objective findings on physical examinations, which showed little evidence of motor or neurological dysfunction," and with the diagnostic images, which were largely unremarkable. AR at 75.

Moreover, the ALJ addressed the additional considerations enumerated in SSR 12-2p. He discussed Plaintiff's daily activities, noting that she worked 26 hours per week from her onset date through May 2014 (AR at 64), that she reported bathing and dressing herself as well as preparing meals, sweeping, and driving (AR at 72), and that she reported walking 30 to 40 minutes per day in 2014[5] (AR at 73). The ALJ considered Plaintiff's treatment through medication, finding that her asthma responded well to an inhaler (AR at 71), that, as of 2015, medication controlled her seizures (AR at 73), and that she declined additional pharmaceutical treatment for headaches in 2015 (AR at 74). As discussed above, the ALJ acknowledged Plaintiff's consistency in seeking medical treatment (AR at 70), but he also noted the absence of medical source statements that would support a claim of disability, (AR at 70, 74). The Court finds that the ALJ adequately considered and discussed the evidence of record, and substantial evidence supports his RFC determination.

---

[5] The ALJ also acknowledged that Plaintiff reported to a different provider, also in 2014, that she could walk "two blocks." AR at 72.

### i.     Opinion of Dr. Tandberg

Plaintiff takes issue with the ALJ's treatment of the opinion by Dr. Tandberg, a consulting and examining physician. The ALJ gave only "partial weight" to this opinion, which included a finding that Plaintiff demonstrated "evidence of fibromyalgia which could provide a moderate functional limitation in terms of lifting and other activities involving the arms and back muscles for an extended period of time." AR at 71, 419. In attributing only "partial weight" to Dr. Tandberg's opinion, the ALJ reasoned that his "conclusion that the claimant would have 'moderate' limitations failed to provide sufficient detail or use appropriate vocational language to describe the extent of [Plaintiff's] physical limitations." AR at 71. The ALJ further explained that he favored the "objective details" of Dr. Tandberg's physical examination over his unspecific opinion regarding moderate limitations. AR at 71.

Plaintiff submits that the ALJ's treatment of Dr. Tandberg's opinion is contrary to the record and to law. *Doc. 17* at 7. First, she insists that Dr. Tandberg made detailed and appropriate findings to support his opinion of moderate limitations, arguing as follows:

> [Dr. Tandberg] measured [Plaintiff's] ability to sit for prolonged periods (noting her discomfort), he found her to have a shuffling gait, he measured range of motion of the lumbar spine (slightly reduced), noted her difficulty getting up and out of the chair, and noted her moderate difficulty lying back on the exam table.

*Id*. But the Court's review of Dr. Tandberg's findings reveals that they are more tempered.

Dr. Tandberg noted some "*mild* discomfort" while sitting, "*minimal* difficulty" getting on and off the exam table and up out of the chair, and a "*stable*" gait with

"*minimal* shuffling" and the ability to do heal-to-toe and tandem walking. AR at 418-19.

He indicated that Plaintiff did not specify how long she could sit or walk, but that she reported being able to cook and shop for groceries. AR at 418. He found a "normal" range of motion in Plaintiff's wrist, elbows, forearms, shoulders, and cervical spine, only "minimal reduced" range of motion with no tenderness in her lumbar spine, the ability to squat, and "motor 5/5 bilaterally in upper and lower extremities." AR at 419. Contrary to Plaintiff's position, these findings provide little support for Dr. Tandberg's opined moderate limitation in lifting or activities involving the arms and back.

It is at least implicit in the ALJ's decision that he too found the "objective details" of Dr. Tandberg's examination inconsistent with his moderate limitation finding. *See* AR at 71 (indicating that the objective details "more accurately described the claimant's impairments and limitations"). In contrast to his characterization of Dr. Tandberg's opinion, the ALJ described the non-examining state agency physicians' opinions as "consistent with the claimant's medical file and other evidence of record as a whole," assigning them "great weight." AR at 75. Notably, after the state agency physicians considered Dr. Tandberg's opinion, they omitted his opined moderate limitation, offering more concrete functional limitations and finding Plaintiff capable of restricted light work. *See* AR at 124, 126, 142-44.

But Plaintiff argues that the ALJ failed to "explain what weight he afforded [Dr. Tandberg's] opinion" or to "make any finding of limitations in lifting, reaching, or bending," which she suggests were required by virtue of the "partial weight" he purported to give his opinion. *Doc. 17* at 8. Clearly, the ALJ indicated the weight he afforded Dr. Tandberg's opinion as a whole; he unequivocally stated that he gave it

"partial weight." AR at 71. In addition to noting the inconsistency between Dr. Tandberg's opinion and the "objective details" derived from his physical examination, the ALJ explained that he found Dr. Tandberg's finding of "'moderate limitations" to lack sufficient detail or "appropriate vocational language" to adequately describe the extent of Plaintiff's physical limitations. AR at 71.

Plaintiff takes issue with the ALJ's rationale, arguing that it was the ALJ's role, not Dr. Tandberg's, to assess limitations in specific RFC language. While this is true, it is equally true that an opinion supported by a more thorough explanation unquestionably deserves more weight. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Here, Dr. Tandberg's opinion – that Plaintiff's fibromyalgia "could provide a moderate functional limitation in terms of lifting and other activities involving the arms and back muscles for an extended period of time" (AR at 419) – could have surely been more precise as to her functional capabilities. The ALJ's rejection of Dr. Tandberg's moderate limitation finding in favor of more "objective details" from the medical records was not in error. *See Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1995) (finding no error in the ALJ's rejection of a treating physician opinion that the claimant had "severe" limitations in standing, walking, stooping, bending, lifting, carrying, and climbing stairs on the basis that it was generic and did not accurately assess the claimant's functional capabilities). Indeed, the Court finds that the ALJ gave specific, legitimate reasons for rejecting Dr. Tandberg's opined moderate limitation.

**B. Plaintiff fails to show reversible error in the ALJ's determination of her non-exertional limitations.**

Plaintiff also takes issue with the ALJ's treatment of opinions regarding her non-exertional limitations**.** She emphasizes that the ALJ was required to include any limitations from even non-severe impairments in his RFC determination. *Doc. 17* at 8. She maintains that the ALJ failed to do so by improperly omitting or rejecting findings of functional limitations by Michael Gzaskow, M.D., and Warren Steinman, Ph.D., a consulting psychiatrist and psychologist, respectively, who each examined Plaintiff on one occasion. *Doc. 17* at 15, 19.

**i.    Opinion of Dr. Gzaskow**

According to the ALJ, Dr. Gzaskow "provided some functional limitations, which [were] of little probative value." AR at 72. Among them were the following:

> The claimant can relate to others, but this is often compromised by her "fibro fog" with episodic depression and anxiety. . . . She can understand directions in a structured/supportive environment and continues to be productive . . . . She can attend to simple tasks but even there needs help periodically from her loving/supportive husband.

AR at 426. As with Dr. Tandberg's opinion, the ALJ discounted the weight he gave Dr. Gzaskow's opinions on the basis that Dr. Gzaskow failed to "provide sufficient details or use appropriate vocational language." AR at 72. Again, the ALJ purported to give more weight to certain "objective details" described in Dr. Gzaskow's clinical interview and mental status examination, which he summarized as follows: "good grooming, cooperative, normal psychomotor activity, no deficits in memory, and fully oriented." AR at 72. And, once again, the ALJ determined that the "objective details" derived from Dr. Gzaskow's examination of Plaintiff, together with the "chronology of the record," "more accurately described the claimant's impairments and limitations" than Dr. Gzaskow's

functional limitations. AR at 72. Plaintiff maintains that the ALJ's selective adoption of *some* of Dr. Gzaskow's findings amounts to improper "picking and choosing" of only the findings supporting a denial of benefits. *Doc. 17* at 16 (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). The Court disagrees.

The ALJ explained why he rejected Dr. Gzaskow's "functional limitations." Based upon its own review of Dr. Gzaskow's opinion, the Court finds his justification for doing so to be fair and legitimate. Once again, an ALJ may discount the opinion of an examining consultative psychologist upon finding the explanation of limitations wanting. *See* 20 C.F.R. § 404.1527(c)(3). The "functional limitations" in Dr. Gzaskow's opinion *do* lack precision, and they *are* unsupported by the "objective details" within the report. That is, there is no indication that Dr. Gzaskow observed signs of Plaintiff's alleged "fibro fog" or her reliance upon her husband for help with simple tasks. Nor are Dr. Gzaskow's limitations supported by reference to other medical signs or laboratory findings within his opinion. Instead, the relevant medical evidence in Dr. Gzaskow's opinion reveals a claimant who was alert and oriented, cooperative, and logical, with good memory and average intellectual functioning. AR at 422-26. Though Dr. Gzaskow did mention that Plaintiff demonstrated a moderately depressed mood with flattened affect and a sad, anxious face, that description corresponded primarily to the telling of her abusive, chaotic childhood. *See* AR at 425. The Court finds no error in the ALJ's treatment of Dr. Gzaskow's opinion or in his rejection of Dr. Gzaskow's functional limitations.

### ii. Opinion of Dr. Steinman

Plaintiff makes a similar argument with respect to Dr. Steinman, who examined

Plaintiff approximately seven months after Dr. Gzaskow. Dr. Steinman opined that

Plaintiff:

> should be able to understand most instructions and, depending on her
> stress level and pain level, she should be able to carry out the tasks
> expected of her. She tends to be irritable and her emotionality fluctuates,
> but she should be able to interact productively with co-workers. Given
> her history of abuse, she may have problems with trust and supervision.
> She may have problems adapting to changing conditions.

AR at 431. The ALJ gave Dr. Steinman's opinion "some weight" but explained that, like

Drs. Tandberg and Gzaskow's opinions, Dr. Steinman's opinion included functional

limitations that were not sufficiently detailed and that failed to include "appropriate

vocational language." AR at 72. While the limitations provided by Dr. Steinman were

arguably more concrete than those offered by Dr. Gzaskow, the Court finds room for

specificity. For instance, Dr. Steinman failed to elaborate on the complexity of

instructions – whether detailed or simple – that Plaintiff could understand or carry out.

He simply opined that she should be able to carry out "the tasks expected of her." Nor

did he specify the degree of interaction that she could tolerate with co-workers,

supervisors, or the general public. It was reasonable for the ALJ to discount the weight

he gave Dr. Steinman's opinion for lack of specificity.

Additionally, the ALJ noted that Dr. Steinman only examined Plaintiff on one

occasion and did not have access to her complete medical file. AR at 72. Plaintiff

submits that it was unfair for the ALJ to discount Dr. Steinman's opinion on this basis,

as the agency itself is required to provide the examiner with relevant medical records.

*Doc. 17* at 15 (citing 20 C.F.R. § 404.1517, which provides that the agency is required

to provide a consultative examiner with relevant medical records). Yet, both the frequency of examination and the medical source's consideration of pertinent evidence in the medical record are factors relevant to the weight a medical opinion deserves. *See* 20 C.F.R. § 404.1527(c)(2)-(3).

With respect to the completeness of the record that Dr. Steinman reviewed, the Court does not read the ALJ's criticism to reflect a failure by the agency to provide Plaintiff's medical records to Dr. Steinman. Instead, it understands the ALJ to say that because additional records became available in the years following, he did not, and could not, have reviewed the later medical records when he issued his opinion. Dr. Steinman issued his medical opinion in 2014, and Plaintiff's record remained open through October 2016. It was not unreasonable for the ALJ to discount Dr. Steinman's medical opinion on the basis that he did not have access to Plaintiff's entire medical file when issuing his opinion.

Perhaps most critically, when comparing Dr. Steinman's mental limitations with the ALJ's RFC, the Court finds that the RFC appears to account for most, if not all, of Dr. Steinman's limitations. Indeed, Plaintiff fails to identify a specific limitation found by Dr. Steinman that the ALJ implicitly rejected or failed to account for in his RFC. As such, Plaintiff fails to show reversible error in the ALJ's treatment of Dr. Steinman's opinion.

### iii.    Opinions of Dr. Atkins and Dr. Bridges

Plaintiff also assigns error to the ALJ's treatment of the state agency non-examining psychologists, suggesting that he failed to either accept their opinions or reject them with explanation. *Doc. 17* at 20. Plaintiff outlines the moderate limitations found by both Howard G. Atkins, Ph.D., and Charles F. Bridges, Ph.D. and argues that

the ALJ's RFC fails to account for certain of them. *Id.* at 21-22. Specifically, she

contends that "the ALJ's finding is underinclusive, because Dr. Atkins also opined that

[she] is limited to understanding, carrying out, and remembering *only simple*

*instructions*, which is more restrictive than a limitation to unskilled work." *Id.* at 22 (citing

*Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016)).[6] The Commissioner, in

contrast, maintains that the ALJ adequately accounted for the opinions of Drs. Atkins

and Bridges as to Plaintiff's ability to understand, carry out, and remember instructions

when he limited her to simple, unskilled work. *Doc. 19* at 21. The Court is persuaded by

the Commissioner's argument.

      In his Mental Residual Functional Capacity Assessment, Dr. Atkins reviewed and

discussed the medical evidence in Plaintiff's record and assessed, in the section of the

assessment sometimes referred to as Section I, a moderate limitation in her ability to

understand, remember and carry out *detailed* instructions. *See* AR at 127. He

concluded in the narrative discussion of the assessment, sometimes referred to as

Section III, that she could "understand, carry out, and remember simple instructions;

make judgments commensurate with functions of simple work, i.e., simple work-related

decisions." AR at 128. At reconsideration, Dr. Bridges affirmed both Dr. Atkins' Section I

---

[6] Plaintiff relies upon *Paulek* in support of her position that a limitation to understanding, carrying out and remembering simple instructions is more restrictive than unskilled work. *Doc. 17* at 22. *Paulek*, however, is not entirely on point. The Court reads *Paulek* to require an inquiry by the ALJ when an inconsistency arises between the reasoning levels of a job referenced by the vocational expert and an RFC limitation to understanding, remembering, and carrying out simple instructions. As discussed below, *Adkins v. Colvin*, No. 14-CV-010143-LTB, 2015 WL 4324564, at *10 (D. Colo. July 16, 2015), *aff'd*, 645 F. App'x 807 (10th Cir. 2016) and *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) control here, as they provide that a limitation to unskilled work adequately accounts for a moderate limitation in the ability to understand, carry out and remember detailed instructions.

moderate limitation regarding detailed instructions, as well as his Section III conclusion. AR at 145. The ALJ, in turn, gave "great weight" to Drs. Atkins and Bridges' opinions and determined, in his RFC determination, that Plaintiff was "limited to unskilled work (work, which needs little or no judgment to do simple duties that can be learned on the job in a short period of time)." AR at 69.

In an unpublished but persuasive opinion, the Tenth Circuit addressed an ALJ's responsibility in evaluating a state agency psychological consultant's Mental Residual Functional Capacity Assessment. The court held that an ALJ may not "turn a blind eye to moderate Section I limitations" and that a psychologist's failure to describe the effect of a Section I moderate limitation in his Section III narrative means that the assessment is not substantial evidence to support an ALJ's RFC determination. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015). Because the ALJ accounted for the effects of Section I limitations in *Carver*, the court concluded there was no reversible error in evaluating the state agency psychological consultant's opinion or in assessing the claimant's RFC. *See id.* (finding no reversible error as to the ALJ's mental RFC, where the ALJ sufficiently captured the essence of the psychological consultant's Section III narrative, which adequately encapsulated the Section I limitations). Pursuant to *Carver*, the Court must consider whether Drs. Atkins and Bridges' Section III narrative conclusions adequately encapsulate the moderate limitations they assessed in Section I of their assessments and whether the ALJ sufficiently captured the essence of those conclusions in his RFC.

Having conducted this analysis, the Court is satisfied that their narrative conclusions *do* adequately encapsulate the assessed moderate limitations, clearly

relating in terms of work-related functions Plaintiff's ability to do work-related mental activities. Similarly, the ALJ sufficiently captured the essence of these conclusions and related Plaintiff's ability to do work-related mental activities in terms of work-related functions. While the ALJ did not explicitly reference a limitation to "simple instructions" in the RFC, "unskilled work" generally requires the ability to understand, remember, and carry out simple instructions. *See Adkins v. Colvin*, No. 14-CV-010143-LTB, 2015 WL 4324564, at *10 (D. Colo. July 16, 2015), *aff'd*, 645 F. App'x 807 (10th Cir. 2016) ("a reference to 'unskilled work' may be construed to incorporate the mental functions associated with unskilled work, which are 'the abilities (on a sustained basis) to understand, carry out, and remember simple instructions . . . .'"); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (citing POMS DI 25020.010, § B(3), quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)). As such, the ALJ sufficiently captured the essence of Drs. Atkins and Bridges' moderate limitation in the ability to understand, carry out, and remember detailed instructions.

Second, Plaintiff contends that the ALJ failed to address an "inconsistency" between the moderate limitation that Dr. Atkins and Dr. Bridges found in her "ability to sustain an ordinary routine without special supervision" and his own RFC, which found that her supervision must be "simple, direct, concrete and non-critical" and that her interpersonal contact with supervisors must be "incidental to work performed." *Doc. 17* at 20-22. Plaintiff contends that "the ALJ's limitations on the type and amount of supervision" are "logically inconsistent with her need for special supervision." *Id.* at 23. The Commissioner maintains that the ALJ's RFC adequately captures Drs. Atkins and Bridge's assessed limitations. *Doc. 19* at 21. Again, the Court agrees with the

Commissioner. After all, the ALJ's RFC does not preclude supervision; rather, it specifies the specific type of supervision that Plaintiff requires in order to sustain an ordinary work routine. Plaintiff has failed to establish that the ALJ's failed to incorporate into his RFC moderate limitations opined by Drs. Atkins and Bridges.

### C. Plaintiff fails to demonstrate that the ALJ relied upon improper factors.

Plaintiff also asserts that the ALJ relied upon "improper factors" in support of his RFC finding. First, she maintains that the ALJ's finding that it was "significant that the claimant's treating sources did not submit medical source statements supporting her claim of total disability" was "contrary to law." *Doc. 17* at 19. Plaintiff reasons that this finding was erroneous, because there is no requirement that she provide evidence other than treatment records and, further, because treating doctors do not naturally assess functional limitations when treating patients. *Id.* The Court disagrees that it was error for the ALJ to observe the lack of medical source statements from treating sources. While it may be true that treating physicians do not automatically assess functional limitations, it does not follow that it was improper for an ALJ to note the lack of medical source statements in support of Plaintiff's claim of disability. Plaintiff does not provide legal support to the contrary.

Second, Plaintiff suggests that it was error for the ALJ to rely upon her purportedly "vague and general" description of symptoms at the administrative hearing when it was his duty to develop the record by asking her to elaborate. *Doc. 17* at 20. Again, Plaintiff's rationale is unpersuasive. The ALJ did *not* find the evidence before him to be inadequate for purposes of determining Plaintiff's functional limitations. Instead, he found her lack of specificity in describing her symptoms to be "one [observation] among

many" that undermined her claims of pain so severe as to support a finding of disability. *See AR* at 70. Having examined the transcript from the administrative hearing (at which the ALJ repeated asked Plaintiff to provide more specific answers to his questions) and the record as a whole, the Court cannot say that further investigation was required before the ALJ could determine Plaintiff's RFC.

### D. Plaintiff fails to demonstrate reversible error with respect to the ALJ's Step-Five determination.

Plaintiff argues that the ALJ also erred with respect to the vocational expert's testimony. First, she contends that errors in the RFC tainted this testimony as well as the ALJ's Step-Five finding. Having found no error in the ALJ's RFC, however, Plaintiff's argument in this regard fails.

Plaintiff also maintains that the ALJ committed legal error by failing to elicit proper foundation for the vocational expert's testimony. *Doc. 17* at 23. Specifically, she argues that the ALJ had an affirmative duty to ensure that the vocational expert knew that she was required to alert him if her testimony was inconsistent with the DOT. *Id.* at 24. She notes that "the ALJ must both '[a]sk the [vocational expert] if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.'" *Id.* (citing SSR 00-04).

Here, Plaintiff observes that the ALJ did not ask the vocational expert if she was aware that her testimony must be consistent with the DOT. *Id.* The Commissioner concedes as much. *Doc. 19* at 22. Even so, the failure to inquire about any such conflicts is not reversible error so long as there is no apparent unresolved conflict. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2; *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir.

2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony . . . and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.").

The Commissioner insists that no unresolved conflict exists. *Doc. 19* at 22. Plaintiff, in contrast, maintains that there was an apparent conflict between the limitation in the ALJ's RFC to no fast-paced production line speeds and the job of Inspector/Hand Packager. *Doc. 17* at 24-25. According to Plaintiff, the Inspector/Hand Packager job appears to be performed in an assembly line setting, which she contends triggered a duty by the ALJ to clarify the vocational expert's testimony. *Doc. 17* at 24. But the Commissioner correctly notes that the DOT job description does not identify the Inspector/Hand Packager job as assembly work or one that requires fast-paced production line speeds. *Doc. 19* at 22 (citing U.S. Dep't of Labor, DOT, No. 559.687-074, 1991 WL 683797 (4th Ed. Rev. 1991)).

More importantly, even if there was an apparent conflict with respect to the Inspector/Hand Packager job, any failure by the ALJ to inquire regarding the conflict was harmless. In addition to identifying the job of Inspector/Hand Packager, the vocational expert testified that Plaintiff was capable of performing the job of Marker, for which there are 70,000 jobs available nationally. AR at 77. The Tenth Circuit has held that only one of the jobs identified by a vocational expert must have significant numbers in the national economy to support a finding of nondisability at Step Five. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). This Court considers 70,000 jobs to rise to the level of "significant numbers" as required by 42 U.S.C. § 423(d)(2)(A). *See King v. Berryhill*, 16cv1147 KBM, Doc. 26, at 25-29 (D.N.M. Feb. 12, 2018) (concluding that

23

substantial evidence supported the ALJ's finding that 47,500 jobs constituted a "significant number" in the national economy, such that the plaintiff was not disabled). Consequently, Plaintiff has failed to demonstrate reversible error with respect to the ALJ's Step-Five determination.

### E. Plaintiff fails to establish reversible error in the Appeals Council's assessment of new evidence.

Finally, Plaintiff argues that the Appeals Council erred in its treatment of records from Mark D. Erasmus, M.D. from May 16, 2016. *Doc. 17* at 26-27. Plaintiff submitted these records to the Appeals Council following the ALJ's decision in this case. *See* AR at 8-52. The Appeals Council determined that the records provided no basis for changing the ALJ's decision. AR at 1-2. Specifically, it reasoned that Dr. Erasmus' medical records did "not relate to the period at issue[, and] [t]herefore . . . [did] not affect the decision about whether [Plaintiff was] disabled on or before November 3, 2016." AR at 2. Accordingly, the Council denied Plaintiff's request for review. AR at 1.

The Appeals Council is required to consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Whether Dr. Erasmus' records qualify as new, material and chronologically pertinent is a question of law subject to *de novo* review by this Court. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). If they are, they become a part of the Court's assessment in evaluating the denial of benefits under the substantial evidence standard. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). The Court reviews the additional evidence submitted to the

Appeals Council to determine whether it would require a change in the outcome of the case. *See O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994).

To the extent that Plaintiff argues that the Appeals Council erred when it determined that Dr. Erasmus' records were not chronologically pertinent, the Court agrees. Dr. Erasmus' records were dated May 15, 2016. Because they "relate[d] to the period on or before the date of the ALJ's decision" that was issued November 3, 2016, they fell within the relevant time period. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Yet the Court must also determine whether these records would have changed the outcome of the case, or, put another way, whether the Appeal Council's error was harmless.

At her May 2016 appointment, Dr. Erasmus saw Plaintiff regarding a pituitary adenoma. AR at 21. He reported a normal physical examination, including normal affect, good recall, symmetric motor exam in upper and lower extremities, and a normal gait. AR at 30. He explained that a December 2015 MRI was compared with a previous CT scan, which noted no change. AR at 30. He opined that Plaintiff's headaches were "probably more likely" caused by cervical disc disease than her pituitary adenoma; nevertheless, he recommended a follow-up MRI in one year to track any changes in the adenoma. AR at 30.

Plaintiff argues that Dr. Erasmus' opinion "provides additional support for [her] claims that her headaches cause limitations. *Doc. 17* at 26 (citing *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013)). The Commissioner, on the other hand, contends that "at best, these notes suggest a possible *source* of Plaintiff's headaches." *Doc. 19* at 23 (emphasis added). The Court finds it significant that Dr. Erasmus' records

do not speak to the frequency or severity of Plaintiff's headaches, but merely identify a possible source. Further, Dr. Erasmus offers no opinion as to limitations that Plaintiff's headaches might cause. Significantly, the ALJ discussed records from various medical sources who addressed Plaintiff's complaints of migraines or headaches (AR at 73-74 (discussing the records from Lee Levin, M.D., from the emergency department of Presbyterian Hospital, and from Manual A. Gurule, M.D.) as well as Plaintiff's own testimony about "severe migraines" (AR at 69). Yet, the ALJ determined that Plaintiff's allegations of disabling pain were "unpersuasive because [her] allegations were greater than expected in light of the objective medical evidence of record." AR at 70. The Court is satisfied that the ALJ accounted for Plaintiff's complaints about headaches and migraines in determining her RFC, and there is no reasonable probability that the records of Dr. Erasmus would change the outcome of his decision. Indeed, the ALJ's determination remains supported by substantial evidence. Any error by the Appeals Council in discounting Dr. Erasmus' records as not time-relevant is harmless.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (*Doc. 17*) is **DENIED**.

_____

UNITED STATES MAGISTRATE JUDGE
Presiding by Consent